Green, J,
delivered the opinion of the court,
Thomas J. Rawlings, one of the defendants, executed the note sued on, to Isaac Rawlings deceased, who appointed William I. Rawlings the other defendant, his executor. He endorsed the note to the plaintiff, who brought this suit against the maker and endorser of the note. Thomas J. Rawlings pleaded, that William I, Rawlings was a slave, and could not as executor, by his endorsement, convey the title to the note in question to the plaintiff,
William I Rawlings, is the son of Isaac Rawlings the testator, by a mulatto woman, who was his slave; he has always been recognized as a son — brought up in his family as a free boy — and so regarded by the said Isaac, who never intended he should be a slave.
In the year 1837, the said Isaac filed his petition in the county court of Shelby county, setting forth these facts and praying that the said William I. Rawlings should be manumitted by the consent of the said county court. The chairman of the county court endorsed on the petition, that in his opinion it would be consistent with the interest of the state, that it be *93 granted; and thereupon the court proceeded to adjudge that the petition be granted, and the said William Isaac Rawlings be free.
It is not shown by the said judgment, that the said Isaac Rawlings entered into bond, conditioned that the said William should leave the State, as the act of 1831, ch. 102, sec. 2, requires; nor is it stated in the judgment that William I. Rawlings had contracted for his freedom previously to the passage of the act of 1831, aforesaid, whereby to exempt him from its provisions, under the act of 1833, ch. 81. The only question for consideration, which we shall notice is, whether the facts mentioned in the act of 1833, that constitute an exception to the act of 1831, must be stated in the judgment of the court, in order to its validity.
There is no question but that by the common law, a slave might be manumitted by parol; such manumission would be implied from many acts of the master. 2 Black. 95. In this country, independently of statutory prohibition, the same principle exists. No deed, nor writing of any kind, is necessary for the purpose of parting with the master’s right. In fact, acts in pais, from which freedom might be implied, have been held sufficient. 9 Jh. Rep. 144, 14 do. 192: 1 Cowen’s Rep. 127, 7, Johnson Rep. 331. But the state has an interest in the character of its citizens, and therefore has the right to regulate by law, the manner in which new members may be introduced into its free community. Hence by several acts of assembly, its assent is made necessary before manumission can take place. The county court has been entrusted by the legislature with the duty, and responsibility of giving this assent. By the act of 1801, ch. 27, this assent was authorized whenever the owner, by petition setting forth his motives and intention, asked it, provided, from the report of the chairman of the court, it should appear to be consistent with the policy and interest of the state, and provided bond should be given to indemnify the county against damages by reason of such emancipated person becoming chargeable.
The act of 1831, ch. 102, requires that bond should be given, that the slave so emancipated should forthwith remove from the *94 state, which condition should be part of the judgment of the court. But by the act of 1833, ch. 81, this condition is dispensed with in all cases, where the court shall be satisfied that the slave had contracted for his freedom previous to the passage of the act of 1831.
In the case of Stewart vs. Miller & Moore, Meigs’ Rep. 575, this court decided, that this proceeding to emancipate a slave, was in the nature of a suit, and that it was not necessary to the validity of a judgment, that all the facts, which the acts of assembly require should appear to the court — should be stated in the judgment, so to have appeared.
In that case, it did not appear in the judgment, that the certificate of the chairman of the court, which the act of 1801 requires, had been made; but it did appear that the court was of opinion that it would be consistent with the policy and interest of the state that the emancipation should take plaqe. This was deemed sufficient.
The act of 1831 requires, that the condition that the emancipated slave shall leave the state, shall be part of the judgment. But the act of 1833 does not require, that proof of the contract, the existence of which dispenses with the provisions of the act of 1831, shall be placed upon the record as part of the judgment. The Legislature confer on the county court the right to assent on the part of the state, to the emancipation, whenever proof shall be made that the contemplated contract existed. The county court of Shelby has given that assent in this case, and we are to presume that the proof required by the act of 1833, was made; for in the language of Judge Spencer, in the case of Oatfield vs. Warning, 14 Jh. Rep. “all presumptions in favor of personal liberty and freedom ought to be made.”
The evidence in this case is ample to show, that the owner Isaac Rawlings, long before the passage of the act of 1831, had regarded and treated William I. Rawlings as free, and that he always intended that he should be free. It is unnecessary to decide whether this conduct and declaration upon this subject amount to a contract, within the meaning of the act of 1833; because we hold that the legislature conferred by that act, on the *95 county court the right to judge of the existence of such contract, and therefore give the assent of the state, and that its judgment is final and conclusive. Judgment affirmed.